UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARRY M. SOUZA, Plaintiff | ) | C.A. No. 05-186/S |
| v. | ) | |
| RHODE ISLAND CARPENTERS' PENSION PLAN, Defendant | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Barry Souza moves pursuant to F.R.C.P. 56 and on his affidavit for summary judgment declaring that the decision by the Board of Trustees of the Rhode Island Carpenters Pension Fund to deny him disability pension benefits was incorrect and in violation of the terms of the Rhode Island Carpenters Pension Plan and remanding the case to the Rhode Island Carpenters' Pension Fund for a full review of his disability pension benefit claim.

Plaintiff files herewith a Rule 12.1 Statement of Undisputed Facts, a supporting memorandum of law and the Affidavit of Barry Souza.

Catherine A. Shaghalian

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq. #6883
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: April 5 , 2006

CERTIFICATE OF SERVICE

TO:

Marc B. Gursky, Esq.
Elizabeth Wiens, Esq.
Gursky Law Associates
420 Scrabbletown Road – Suite C
North Kingstown, RI 02852

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Plaintiff's Motion For Summary Judgment by mailing first class mail, postage prepaid, on the 6th day of April, 2006.

Melaine Scotti

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARRY M. SOUZA, Plaintiff | ) | C.A. No. 05-186/S |
| v. | ) | |
| RHODE ISLAND CARPENTERS' PENSION PLAN, Defendant | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Barry Souza moves pursuant to F.R.C.P. 56(b) for summary judgment declaring that the decision by the Board of Trustees of the Rhode Island Carpenters Pension Fund to deny him disability pension benefits was incorrect and in violation of the terms of the Rhode Island Carpenters Pension Plan. Mr. Souza further requests that the Court remand the case to the Rhode Island Carpenters' Pension Fund for a full review of his disability pension benefit claim.

**FACTS**

Barry Souza is a member of the United Brotherhood of Carpenters and Joiners of America, Local 94 ("Carpenters Union"). Statement of Undisputed Facts ("SUF"), ¶ 1. As a member of the Carpenters Union, he is eligible to participate in the Rhode Island Carpenters Pension Plan (the "Plan") sponsored and administered by the Rhode Island Carpenters' Pension Fund (the "Fund"). SUF, ¶ 1. The Plan is an employee benefit plan as that term is defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001 et seq. Id. at ¶ 2. At all relevant times Mr. Souza was a participant in the Plan. Id. at ¶ 3.

Under the Plan, a participant is "entitled to retire on a disability pension if he becomes 'Totally and Permanently Disabled' before age 62, has at least ten years of Credited Service, of which one (1) year shall be Credited Future Service . . ." Id. at ¶ 4. The Plan defines "Total Disability" as a "physical or mental condition . . . resulting in the Employee being unable to engage in any regular employment in the Carpenter and Joiner trade or in any other regular employment . . ." Id. at ¶ 5. The Plan further defines "Total and Permanent Disability" as "'Total Disability' which is presumably permanent. The Trustees shall accept as prima facie proof of total and permanent disability a determination by the Social Security Administration that the Employee is entitled to a Social Security Disability benefit . . ." Id.

The Summary Plan Description ("SPD") that the Fund provided to Mr. Souza states: "The Trustees will accept a determination by the Social Security Administration that you are eligible for Social Security disability benefits as proof of total and permanent disability." Id. at ¶ 6.

The Plan provides a two step procedure for reviewing disability pension benefit claims. If a participant's claim is wholly or partially denied, he has 60 days to request a review of that claim. The decision on review will be made within 90 days after the claim is received by the Trustees. If a decision is not made within this period, the claim is considered denied on review. Id. at ¶ 7.

According to Section 10.1 of the Plan, any amendment must be made pursuant to "a resolution duly adopted by the Trustees." Id. at ¶ 8. Past amendments to the Plan are formalized in writing and signed by all of the Union and Contractor Trustees.

Id. at ¶ 9. They state that the Plan is being amended. Id. They refer to the section of the Plan being amended and contain the text of the amended section. Id.

On or about March 9, 2002, Mr. Souza fell from scaffolding and fractured his left ankle. Since the accident, he has suffered from continuing left knee pain. Id. at ¶ 10.

In or about October, 2004, Mr. Souza applied for disability pension benefits under the Plan. Id. at ¶ 11. By letter dated October 27, 2004, the Fund told Mr. Souza that its Board of Trustees ("Trustees") had denied his application for disability pension benefits because the Trustees required "a determination of total and permanent disability from Social Security Disability." Id. at ¶ 12. The letter stated that: "If Social Security Disability will give a medical determination that you are disabled, the Board may approve a Disability pension at that time." Id.

Mr. Souza, through counsel, told the Fund in a November 11, 2004 letter that he did not have sufficient quarters to qualify for Social Security disability benefits. Id. at ¶ 13. He attached a copy of his Social Security Statement indicating that he did not have "enough credits in the right time period." Id. He requested that the Fund "evaluate his eligibility for disability pension benefits on its own." Id.

The Fund in a November 29, 2004 letter responded that "at a Board Meeting on May 21, 2002, the Trustees of the Rhode Island Carpenters Pension Fund voted to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002." Id. at ¶ 14. No such requirement appears in the Plan or SPD provided to Mr. Souza. Id. at ¶ 15. Minutes from the May 21, 2002 meeting of the Trustees

contain the only reference to this requirement. Id. at ¶ 16. The minutes note that "motion was made and seconded to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002." Id.

On May 2, 2005, Mr. Souza filed a claim for disability pension benefits under 29 U.S.C. § 1132(a)(1)(B). Id. at ¶ 17.

## ARGUMENT

### I. The Plan Does Not Confer Discretionary Authority On The Fund

The parties agree that ERISA governs this action. Under ERISA a denial of benefits "is to be reviewed under a de novo standard of review *unless* the benefit plan gives the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). A clear grant of discretionary authority must be found. Terry v. Bayer Corp. 145 F.3d 28, 37 (1st Cir.1998).

Defendant refers to section 4.2 of the Fund's Agreement and Declaration of Trust ("Trust Agreement") as conferring discretionary authority on the Trustees. Def.'s Answer to Plf's Interrogatory 1. A true copy of Defendant's Answers to Plaintiff's Interrogatories is attached as Exhibit 1. Section 4.2 provides that:

> The Trustees shall have full authority to determine the requirements with which an individual must comply in order to be eligible for benefits and determine all of the terms and conditions of eligibility of Eligible Persons for the purpose of this trust.

Affidavit of Barry Souza, Exhibit A. This language does not rise to the level of a clear grant of discretionary authority that the First Circuit finds sufficient to trigger an arbitrary and capricious standard of review. See e.g., Fenton v. John Hancock Mut. Life Ins. Co.,

400 F.3d 83 (1st Cir. 2005); Leahy v. Raytheon, 315 F.3d 11 (1st Cir. 2002). The following language is a "clear grant of discretionary authority":

> The Company shall be the named fiduciary and the administrator of the Plan for purposes of ERISA and shall have the authority to control and manage the operation and administration of the Plan. The Company shall have the power to adopt such rules and regulations as it may deem necessary or appropriate for the efficient operation and administration of the Plan . . . The Company shall interpret the Plan and determine all questions arising under it. Any such determination by the Company shall be binding on all persons affected thereby.

Fenton, 400 F.3d at 90. Moreover, the plan language at issue in Leahy provided that the plan administrator had "the exclusive right, in [its] sole discretion, to interpret the Plan and decide all matters arising thereunder..." and that any decision by the plan administrator in the exercise of that authority is "conclusive and binding on all persons unless it can be shown that the determination was arbitrary and capricious." Leahy, 315 F.3d at 15.

The language in section 4.2 of the Trust Agreement makes no reference to the Trustees' authority to interpret the Plan or to make benefit determinations. The Trustees are not authorized to decide matters arising under the Plan. There is no indication that the Trustees' decisions are conclusive and binding. Because section 4.2 does not rise to the level of a clear grant of discretionary authority, the Court should review the Fund's decision de novo.

## II. The Evidence Is Limited To The Claim File

The nature of a court's role in judicially reviewing an out-of-court claims decision--as opposed to the role of a court in other civil actions generally--is distinctive:

> A civil action for judicial review of an out-of-court decision is fundamentally different from a paradigm civil action asserting tort,

> contract, or property claims, or even alleged rights to equitable or declaratory relief. In cases of judicial review, ordinarily no right to jury trial is involved, and no need or authority exists to make factual findings of the kind regularly made by a jury, or by the trial judge in a nonjury trial.

Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 829 (1st Cir.1997).

Under ERISA, when a court undertakes judicial review of a benefit determination, the evidence before the court is generally limited to the administrative record before the plan administrator when it made its decision. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). This is because:

> The decision to which judicial review is addressed is the final ERISA administrative decision. It would offend interests in finality and exhaustion of administrative procedures required by ERISA to shift the focus from that decision to a moving target by presenting extra administrative record evidence going to the substance of that decision.

Id.

The focus of judicial review, under any standard of review, is the administrator's decision and must ordinarily be based on the administrative record. Id. Prior to Orndorf, the issue of whether evidence outside of the administrative record was admissible under de novo review was unresolved in the First Circuit. See Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003). The Liston court held that under an arbitrary and capricious standard of review, the focus of judicial review is ordinarily on the record made before the administrator. Id. Liston failed to address whether the same rule applied under de novo review. Id. Orndorf, however, explicitly extends this rule to cases where the benefit denial is subject to de novo review. Orndorf at 519.

The Orndorf court concluded that there may be circumstances in which it is appropriate for courts to hear new evidence. Id. at 520. "Where the challenge is not to the merit of the decision to deny benefits, but to the procedure used to reach the decision, outside evidence may be of relevance." Id. Although the document containing minutes from the May 21, 2002 meeting of the Trustees is neither a plan document nor part of the claim file, the Court should consider it because the Fund relied on it exclusively in denying Mr. Souza disability pension benefits. Moreover, it meets the Orndorf exception. The minutes are relevant to the issue of what procedure the Fund followed in determining that Mr. Souza was not eligible for disability pension benefits.

**III. Mr. Souza Has Exhausted Administrative Remedies**

The Plan may contend that Mr. Souza has not exhausted administrative remedies under the Plan. It is well established in the First Circuit and every other Circuit that plaintiffs seeking plan benefits under ERISA must exhaust administrative remedies before filing suit. Drinkwater, 846 F.2d at 826; Corsini v. United Healthcare Corp., 965 F. Supp. 265, 268 (D.R.I. 1997); Tarr v. State Mutual Life Assurance Co. of Amer., 913 F. Supp. 40, 44 (D. Mass. 1996).

The Plan provides a two step administrative review process. SUF, ¶ 7. If a participant's claim is wholly or partially denied, he has 60 days to request a review of that claim. Id. The decision on review will be made within 90 days after the claim is received by the Trustees. Id. If no decision is issued within 90 days, the claim is considered denied on review.

Mr. Souza's claim was initially denied on October 27, 2003 solely on the ground that he did not have a disability determination from Social Security. Id. at ¶ 12.

In a November 11, 2004 letter he requested that the Fund "evaluate his eligibility for disability pension benefits on its own." Id. at ¶ 13. This letter served as an appeal of the Fund's initial determination.

The Fund in a November 29, 2004 letter responded that "at a Board Meeting on May 21, 2002, the Trustees of the Rhode Island Carpenters Pension Fund voted to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002," Id. at ¶ 14, effectively denying Mr. Souza's claim on appeal. Even if the Court does not construe this letter as a denial, Mr. Souza's claim must be considered denied because he received no decision from the Fund within 90 days after requesting a review of his claim. [1]

**IV. The Trustees' Purported "Interpretation" Of Total And Permanent Disability Imposes An Eligibility Requirement Not Found In The Plan Documents**

When a plan administrator's interpretation adds requirements not found in the benefit plan or is unsupported by federal common law, it not only acts incorrectly and in violation of the plan, but it also acts arbitrarily and capriciously. See Jones v. Metropolitan Life Insurance Co., 385 F.3d 654, 661 (6th Cir. 2004); Univ. Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 849 (6th Cir. 2000); Canseco v. Constr. Laborers Pension Trust for Southern California, 93 F.3d 600, 608-609 (9th Cir. 1996); Swabak v. American Information Technologies Corp., 103 F.3d 535, 541-42 (7th Cir. 1996); Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 459-60 (9th Cir. 1996); Epright v. Environmental Management, Inc.

---

[1] Moreover, any attempt by Mr. Souza to exhaust administrative remedies at this point would be futile. Drinkwater 846 F.2d at 826, citing Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980).

Health and Welfare Plan, 81 F.3d 335, 342 (3rd Cir. 1996); Florence Nightingale Nursing Serv., Inc. v. Blue Cross Blue Shield of Alabama, 41 F.3d 1476, 1483-84 (11th Cir. 1995); O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995); Ganze v. Dart Industries, Inc., 741 F.2d 790, 793 (5th Cir. 1984); Morgan v. Mullins, 643 F.2d 1320, 1324 (8th Cir. 1981); Harrell v. Metropolitan Life Insurance Co., 401 F. Supp. 2d 802, 809 (E.D.Mich. 2005); Dabertin v. HCR Manor Care, Inc., 235 F. Supp. 2d 853, 866-67 (N.D.Ill. 2002). "Discretion to interpret a plan does not include the authority to add eligibility requirements to the plan." Jones, 385 F.3d at 661.

In Saffle, plaintiff was a participant in the Sierra Pacific Power Company Bargaining Unit's long term disability income plan. 85 F.3d at 457. She brought suit after the plan administrator denied her occupational disability benefits on the ground that she could perform substantial portions of her regular job with certain accommodations. Id. The plan at issue, however, provided that a participant would be considered totally disabled if during the first 24 months of monthly benefits the participant was completely unable to perform each and every duty of his regular occupation. Id. The plan administrator's interpretation of the plan's definition of total disability to include "modifications or accommodations to work available for which a participant is qualified" was contrary to its plain meaning. Id. at 459. To "construe the Plan this way, as the Committee did, effectively imposed a new requirement for coverage…However, an administrator lacks discretion to rewrite the Plan." Id. at 459-460. The administrator had arbitrarily construed the plan. Id. at 460.

Here the Fund required Mr. Souza to obtain a disability determination from the Social Security Administration before they would award him disability pension

benefits. No such requirement is contained in the definition of total and permanent disability in the SPD or the Plan.

Total disability is defined in the Plan as a physical or mental condition that results in a participant being unable to engage in any regular employment in the Carpenter and Joiner trade or in any other regular employment. Total and permanent disability is total disability which is presumably permanent. SUF, ¶ 5. According to the 1994 SPD, the Trustees will accept a determination by the Social Security Administration that a participant is eligible for Social Security benefits as *proof* of total and permanent disability. SUF, ¶ 6. It is not a requirement. Moreover, under the terms of the Plan itself, the Fund can accept a Social Security disability determination as *prima facie proof* of total and permanent disability. Id. at ¶ 5. Again, it is not a pre-requisite to being approved for disability pension benefits. The Trustees arbitrarily imposed an eligibility requirement for disability pension benefits that does not exist under the terms of the Plan.

**V. The Fund Violated The Express Terms of The Plan**

The Fund's "interpretation" of the Plan is likewise unsupported by federal common law. The provisions of an ERISA-regulated employee benefit plan must be interpreted under principles of federal common law. Filiatrault v. Comverse Technology, Inc., 275 F.3d 131, 135 (1st Cir. 2001). Federal common law embodies "commonsense principles of contract interpretation." Id. "Thus, straightforward language in an ERISA-regulated plan should be accorded its plain, ordinary, and natural meaning." Id., citing Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir.1989). The Plan language here could not be any clearer—a disability determination from Social Security is *prima facie proof* of disability. It is evidence of disability. No Plan participant could

reasonably conclude that a Social Security disability determination is a prerequisite to eligibility under the Plan.

## VI. The Fund's Purported "Interpretation" Of The Plan In Effect Amended The Plan's Definition Of Total And Permanent Disability.

When a plan administrator's interpretation of a term in the plan adds new criteria, it modifies or amends the terms of the plan. Dabertin, 235 F. Supp. 2d at 866-67; see also Univ. Hosp. of Cleveland, 202 F.3d at 849 (finding that plan administrator exceeded its power to interpret the plan and had effectively rewritten the plan by adding an additional qualifier to plan language); Epright, 81 F.3d at 342-43 (holding that plan administrator's imposition of a standard not required by the plan was an amendment to the plan).

In Dabertin, plaintiff brought an action under ERISA seeking severance benefits. Under the severance plan at issue, plaintiff was entitled to severance benefits if she terminated her employment with the company because of a significant reduction in the "scope" of her authority, position, title, functions, duties or responsibilities. 235 F. Supp. 2d at 856. Plaintiff terminated her employment after her employer, which operated skilled nursing facilities, merged with another corporation. Id. at 856-57. In her new position with the merged company, plaintiff was assigned a smaller number of facilities, beds, construction projects, budgeted revenue and operating profit. Id.

The plan administrator denied plaintiff severance benefits, concluding that if a participant continued to have a full range of operational, financial, administrative and other authority, functions, duties and responsibilities with respect to the business unit a participant managed, the *scope* of the participant's authority, position, title, functions,

duties or responsibilities was not affected. It also found that her title and position were not significantly reduced. Id. at 858.

Plaintiff successfully argued that the plan administrator's interpretation of the term "scope" imposed new criteria that modified or amended the terms of the severance plan. Id. at 866. The applicable plan provision did not refer to changes in the business unit a participant managed and did not require an effect on a participant's status in the organization. Id. The plan contained no requirement that changes to a participant's employment be "degrading or humiliating." Id. These requirements, however, were imposed by the plan administrator in denying plaintiff severance benefits. Id. They were not simply an "interpretation" of the plan, but were modifications to it. Consequently, the plan administrator's decision to deny benefits based on these requirements was arbitrary and "downright unreasonable." Id. at 868.

Similarly, the Fund's purported "interpretation" of the Plan amended the Plan's definition of total and permanent disability. Under the express terms of the Plan, a determination of total and permanent disability by the Social Security Administration is prima facie proof of total and permanent disability under Plan. SUF, ¶ 5. Without a Social Security disability determination, a participant can still be awarded disability pension benefits if he can show that, as a result of a physical or mental condition, he is unable to engage in any regular employment in the Carpenter and Joiner trade or in any other regular employment and that his disability is permanent.

Under the Fund's "interpretation" of total and permanent disability, a participant cannot be awarded disability pension benefits unless he or she obtains a determination of total and permanent disability from Social Security first. Because there

is no requirement anywhere in the Plan that a participant obtain a disability determination from Social Security in order to be eligible for disability pension benefits, the Fund has re-written the plan under the guise of interpreting it. "Interpretation and modification are different; the power to do the first does not imply the power to do the second." Dabertin at 867, citing Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104, 1008 (7th Cir. 1998).

## VII. The Plan Was Not Properly Amended To Include The Requirement That A Participant Obtain A Social Security Disability Determination

Every employee benefit plan must provide a procedure for amending the plan and for identifying the persons who have authority to amend the plan. 29 U.S.C. § 1002(b)(3). The purpose of this provision is to ensure that "every employee may upon examining the plan documents determine exactly what his rights and obligations are under the plan." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995).

Amendments, therefore, must be adopted in writing and in the manner required under the benefit plan. Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26 (1st Cir. 1991); Dall v. The Chinet Co., 33 F. Supp. 2d 26, 42 (D. Me. 1998); see also Allen v. West Point-Pepperell, Inc., 908 F. Supp. 1209, 1222 (S.D.N.Y. 1995) (a change in the terms of a benefit plan is only valid if made in writing pursuant the amendment procedure and by the amending authority set forth in the benefit plan); Washington Nat'l Ins. Co. v. Hendricks, 855 F. Supp. 1542, 1556-57 (W.D.Wis. 1994) (a writing that does not comply with the amendment procedures of the plan cannot become a part of the plan). It is well settled that an ERISA plan may not be amended informally. Dall v. The Chinet Co., 33 F. Supp. 2d 26, 42 (D. Me.1998). Informal or unauthorized modification of

pension plans is impermissible under ERISA. Biggers v. Wittek Industries, Inc., 4 F.3d 291 (4th Cir.1993); Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir. 1989).

According to Section 10.1 of the Plan, any amendment must be made pursuant to "a resolution duly adopted by the Trustees." SUF, ¶ 8. Past amendments to the Plan, are formalized in writing and are signed by all of the Union and Contractor Trustees. These documents state that the Plan is being amended. They refer to the section of the Plan being amended and contain the text of the amended section. Id. at ¶ 9.

The Trustees failed to follow the Plan's amendment procedures when they re-wrote the Plan's definition of disability to include a requirement that a participant obtain a disability determination from Social Security first. The only writing that reflects this change is minutes from the May 21, 2002 meeting of the Trustees. The minutes are not a "resolution duly adopted by the Trustees." The minutes do not refer to any amendment. The change is not contained in any formal amendment or in any Plan documents.

As a matter of law, the requirement that Mr. Souza obtain a Social Security disability determination in order to be eligible for disability pension benefits is invalid because the Plan was not properly amended to include it.

## VIII. The Fund's Decision To Deny Mr. Souza Benefits Was Incorrect And Contrary To The Terms Of The Plan

The Fund based its decision to deny Mr. Souza benefits exclusively on the ground that he did not have a disability determination from Social Security. It contends that it simply "interpreted" the Plan, but in reality it has imposed a wholly new requirement on plan participants. Rather than using a disability determination from Social Security as *evidence* of disability pursuant to the terms of the Plan, the Fund

required that Mr. Souza obtain one before it would even consider his claim for disability pension benefits. It amended the Plan's definition of total and permanent disability, but neglected to follow the Plan's formal amendment procedures. Even under the most deferential standard of review, the Fund acted arbitrarily and capriciously in denying Mr. Souza disability pension benefits based solely on an invalid Plan amendment.

## IX. The Case Should Be Remanded To The Fund For A Full Review Of Mr. Souza's Claim

The case should be remanded to the Fund so that the Fund may review and evaluate Mr. Souza's entitlement to disability benefits on the merits. Recupero, 118 F.3d at 827; Unum Life Ins. Co. of America v. Cappello, 278 F. Supp. 2d 228, 236 (D.R.I. 2003). In Cappello, an ERISA case, defendant contended that she was entitled to long term ("LTD") disability benefits under an employee welfare plan. Cappello, 278 F. Supp. 2d at 232. Similarly, defendant's claim was denied on a technical ground—namely that a severance agreement and release that she signed barred her claim. Id. Plaintiff did not review defendant's LTD claim on the merits. Id. at 236.

After this Court determined that the severance agreement and release did not bar defendant's LTD benefit claim, it concluded that the proper procedure for evaluating defendant's LTD claim on the merits was to retain jurisdiction and remand the case back to the plan administrator. Id. Here the Trustees denied Mr. Souza's claim on a technical ground without evaluating whether he is disabled and without giving him an opportunity to submit medical evidence. The appropriate procedure under ERISA is to remand this case to the Fund for a full review of Mr. Souza's claim.

## X. There Being No Dispute As To Any Material Fact, Summary Judgment Should Enter For Mr. Souza

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. United States ex. rel. D'Ambra Constr. Co., Inc. v. St. Paul Mercury Ins. Co., 24 F. Supp. 2d 218 (D.R.I. 1998). In determining whether summary judgment is appropriate, the court must view the facts on the record and all inferences therefrom in the light most favorable to the non-moving party. Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991), citing Garside v. Osco Drug, Inc., 895 F.2d 46 (1st Cir. 1990).

The only issue before the Court is a threshold legal issue—whether the Trustees properly imposed this requirement on Mr. Souza. There is no dispute of material fact. The Trustees denied Mr. Souza's claim exclusively on the ground that he did not have a determination of total and permanent disability from Social Security. No such requirement exists in the Plan. The Trustees did not formally amend the terms of the plan to include it. As a matter of law, the Trustees' decision to deny Mr. Souza disability pension benefits should be overturned because it is incorrect and violates the express terms of the Plan.

## CONCLUSION

For the foregoing reasons, plaintiff Barry Souza requests that the court enter judgment in his favor and remand the case to the Rhode Island Carpenters' Pension Fund.

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq. #6883
VETTER & WHITE
Attorneys for Defendant
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: April 5 , 2006

CERTIFICATE OF SERVICE

TO:

Marc B. Gursky, Esq.
Elizabeth Wiens, Esq.
Gursky Law Associates
420 Scrabbletown Road – Suite C
North Kingstown, RI 02852

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Plaintiff's Memorandum in Support of His Motion For Summary Judgment by mailing first class mail, postage prepaid, on the 6th day of April, 2006.