UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARRY M. SOUZA, *Plaintiff*, | : | |
| v. | : | C.A. No. 05-186S |
| RHODE ISLAND CARPENTERS PENSION PLAN, *Defendant*. | : | |

**DEFENDANT'S OBJECTION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant hereby objects to Plaintiff's Motion for Summary Judgment for the reasons set forth in Defendant's Memorandum of Law and Statement of Genuine Issues of Material Fact, attached hereto.

Respectfully submitted,
On behalf of Plaintiff,
By its attorneys,

Marc B. Gursky, Esq. (#2818)
Elizabeth Wiens, Esq.(#6827)
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852
Tel. (401)294-4700
Fax (401)294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail, postage prepaid, to Catherine A. Syner, VETTER & WHITE, 20 Washington Place, Providence, RI 02903 on this 19 day of May, 2006.

E. Wei

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARRY M. SOUZA, *Plaintiff*, | : | |
| v. | : | C.A. No. 05-186S |
| RHODE ISLAND CARPENTERS PENSION PLAN, *Defendant*. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendant Rhode Island Carpenters Pension Plan ("Defendant" or "Plan") is an employee pension plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2). The Plan was created to provide pension benefits to eligible participants. In or about October, 2004, Plaintiff applied for disability pension benefits under the Plan. The Plan, through its Board of Trustees, denied Plaintiff's request because Plaintiff failed to meet the definition of "total and permanent disability." Plaintiff then filed the instant action seeking, *inter alia*, an award of disability pension benefits. Because, as a matter of law, the Plan's denial of benefits was reasonable and appropriate, Plaintiff's Motion must be denied.

**Argument**

Plaintiff has failed to prove "that there is no genuine issue as to any material fact" as required by Fed. R. Civ. P. 56(c). See also Rosado v. Wackenhut P.R., Inc., 160 Fed. Appx. 5, 8 (1st Cir. 2005). On the contrary, several issues of material fact exist. First, there exists a question of fact as to whether Plaintiff could qualify for a disability pension

under the Trustees' interpretation of the Plan. If he does qualify, then he may not even have standing to contest his denial of benefits. Second, there exists a question of fact as to whether Plaintiff is a "Participant" within the meaning of the Pension Plan, and thus whether he could be eligible for benefits under any set of circumstances. Last, there exists a question of fact as to whether Plaintiff made false statements on his pension application, thereby rendering him ineligible for pension benefits.

Even if each of the aforementioned issues of material fact are resolved in favor of Plaintiff, Defendant is entitled to judgment as a matter of law because its decision to deny a disability pension to Plaintiff was not arbitrary or capricious.

## I. THERE EXIST SEVERAL QUESTIONS OF MATERIAL FACT WHICH PREVENT SUMMARY JUDGMENT FROM ENTERING FOR PLAINTIFF

### A. There Is A Question Of Fact Regarding Whether Plaintiff Has Standing To Assert His Claim

There is a mixed question of law and fact as to whether Plaintiff has standing to bring his claim. Plaintiff bears the burden of proving that he has standing. Ramirez v. Ramos, 438 F.3d 92, 100 (1st Cir. 2006).

> To establish standing in federal court, a party must demonstrate three things:
> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Comfort v. Lynn Sch. Comm., 418 F.3d 1, 10 (1st Cir. 2005), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

Plaintiff does not have standing. His alleged injury is the wrongful denial of a disability pension due to the trustees' adoption and application of the May 21, 2002 resolution. Thus, to establish standing, Plaintiff must prove that his injury was causally related to the resolution. To do this, he must prove either that (1) he cannot obtain a social security determination or (2) that he obtained an unfavorable determination by the SSA, which he thereafter unsuccessfully appealed. However, Plaintiff has offered no evidence that either criterion was met.

Plaintiff submitted his application for pension benefits on or about September 29, 2004. On his application, Plaintiff noted that he did not obtain a determination of disability from the SSA. See Plaintiff's Exhibit C, attached to Affidavit of Barry Souza. On October 19, 2004, the Trustees reviewed Plaintiff's application and denied the request because Plaintiff failed to provide a determination of total and permanent disability from the Social Security Administration as required by the Plan. The Fund's Administrator informed Plaintiff of the denial in an October 27, 2004 letter. See Plaintiff's Exhibit C. The letter also informed Plaintiff, "if Social Security Disability will give a medical determination that you are disabled, the Board may approve a Disability pension at that time." Id. Plaintiff's attorney, William Gately, Jr., responded to the Fund in a November 11, 2004 letter, enclosing a copy of Plaintiff's Social Security Statement. The letter provides, "Barry Souza cannot get a determination from Social Security concerning his disability because he does not have sufficient quarters to qualify for Social Security. He

was self-employed for a time and did not contribute to Social Security." See Plaintiff's Exhibit C. Plaintiff's Social Security Statement, dated April 15, 2002, provides that he is not entitled to *benefits* if he becomes disabled because he does "not have enough credits in the right time period." See Plaintiff's Exhibit C. The Fund replied on November 29, 2004 and informed Attorney Gately that, at a Board Meeting on May 21, 2002, the Trustees voted to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Funds. See Plaintiff's Exhibit C.

The Social Security Statement that Plaintiff supplied to the Trustees does not establish that he cannot get a determination from the SSA. Rather, it is merely an estimation of his work credits. The Statement provides, "we also included credits we *assumed* you earned last year and this year." Moreover, Plaintiff did not submit an up-to-date Social Security Statement to the Trustees. Even though he applied for his pension on September 29, 2004, the Social Security Statement he submitted was dated April 15, 2002. Accordingly, the Social Security estimate does not include the years 2002, 2003 and 2004. According to Defendant's records, Plaintiff worked 1975 hours in 2002 and 23 hours in 2003. See Plaintiff's Exhibit C, Pension Analysis. Thus, it is entirely possible that Plaintiff qualifies for a Social Security disability.

Next, by his attorney's admission, Plaintiff "was self-employed for a time and did not contribute to Social Security." See Plaintiff's Exhibit C, November 11, 2004 letter from William Gately. Had Plaintiff properly reported these hours to the SSA, he may very well have been eligible for Social Security disability.

Moreover, Plaintiff's Social Security statement indicates that he did not report any earnings from the years 1996, 1997 and 1998. Plaintiff testified during his deposition that, during those years, he lived off his annuity. See Plaintiff's Deposition Transcript, attached hereto as Exhibit 2. However, Fund records reveal that Plaintiff did not receive any annuity payments for those years. See Affidavit of Betty Pacheco, attached hereto as Exhibit 3. Thus, it is very possible that Plaintiff was working during those years but did not report his earnings to the SSA.

Finally, even if he was not entitled to Social Security benefits, Plaintiff may have been able to obtain a determination of disability from the SSA. See Affidavit of Donald Lavin, attached hereto as Exhibit 4. Plaintiff has not alleged that he unsuccessfully attempted to obtain such determination. Accordingly, Plaintiff cannot prove that he has standing to assert the instant claim.

**B. There Exist A Question Of Fact As To Whether Plaintiff Is A Participant Within The Meaning Of The Plan**

Plaintiff is not entitled to a disability pension under the Plan unless he can prove that he is a "participant." Section 3.4 of the Pension Plan provides, inter alia, "[a] Participant shall be entitled to retire on a Disability Pension if he becomes Totally and Permanently Disabled before age 62." A "Participant" is defined in Section 1.10 as

> an Employee who is engaged in Covered Employment for a consecutive twelve-month period during which... he works at least 160 hours in Covered Employment... *and who thereafter in each Plan Year subsequent to the Plan Year in which he became a Participant works...* in Covered Employment at least 160 hours... for which contributions are required to be made or for which he received credit under Section 2.6 hereof.

(Emphasis added). Plaintiff only worked 23 hours in 2003. See Plaintiff's Exhibit C, Pension Analysis. Accordingly, on January 1, 2004, he ceased being a Participant under

the Plan.[1] Consequently, when he applied for a disability pension on September 29, 2004, he was no longer a Participant in the Plan and was, therefore, not eligible to receive a disability pension.

**C. There Exists A Question Of Fact As To Whether Plaintiff Is Estopped From Obtaining A Disability Pension As A Result Of His Misrepresentations To The Fund**

Plaintiff may be disqualified for pension benefits due to false statements made on his pension application. Page four of the application, signed by Plaintiff, provides, "[t]he above statements are true to the best of my knowledge and belief. I understand that a false statement may disqualify me for pension benefit, and that the Trustees shall have the right to recover any payments made to me because of a false statement." See Plaintiff's Exhibit C. Plaintiff falsely stated on his application that he last worked on July 17, 2002. However, payroll records and remittance reports, attached hereto as Exhibit 1, indicate that Plaintiff worked in covered employment for J.G. Edwards from July 29, 2002 through January 10, 2003. According to the same pension application, Plaintiff was out of work and receiving Workmen's Compensation for the period of March 9, 2002 to September 29, 2004. Moreover, during his deposition, Plaintiff admitted that some of the statements made on his application were false.

> Q. Okay. So where it says here, in item number 10 [of the pension application], for the dates that you were receiving workers' comp, from 3/9/02, to date and continuing, that's not right, am I right?
> A. Yeah. That's wrong.

TR 43:18-22.

> Q. Now, in your application for benefits, and Ill give it back to you, you told the fund that your last date worked was July 17 of '02. Do you see that?

---

[1] Defendant expresses no opinion as to whether Plaintiff was ever a "Participant" under the terms of the Plan.

A. Yeah, right here, yes.
Q. Okay. But it's your testimony today that in 2003 you worked for Dukey Edwards, am I right?
A. Yes.
Q. And you did that five or six months?
A. Yes.
Q. As a Union carpenter?
A. Yes.
Q. Okay. Why did you tell the fund in 2004 that your last day worked was July of '02, when you had worked in 2003 from five or six months as a Union carpenter?
A. Last date I worked, that was for Brand Scaffolding.
Q. It doesn't say Brand Scaffolding on the form, does it?
A. No. That's the last day I worked, I left from them.
Q. What led you to leave out Dukey Edwards?
A. You asked me for 2004. 2003.
Q. Right.
A. I really don't know why. I don't know why.

TR 65:8-66:5.

Likewise, Plaintiff's application lists his date of disability as either March 9, 2002 ("date of injury") or July 17, 2002 ("last day worked"). However, as indicated above, Plaintiff was not disabled during this time; rather, he was working for J.G. Edwards. He admitted as much at his deposition.

Q. Mr. Souza, you're not saying that you were unable to work after July of 2002, are you?
A. I was able to go – I was hoping I was able to go to work.
Q. And you did work?
A. Yes, I did.

TR 67:10-15.

He also admitted that, after he stopped working for J.G. Edwards, he collected unemployment, which required him to attest that he was ready, willing and able to work.

Q. What was your reason for leaving Dukey Edwards?
A. Laid off, couldn't do the job.
Q. Did you receive unemployment?
A. Yes, I did.

Q. During what period of time did you receive unemployment benefits?
A. After I got laid off.
Q. For how long?
A. I couldn't tell you that either.
Q. Well, did you get it for as long as they were willing to give them to you?
A. Yeah, I guess so. I ran it out. I think I ran it out, yes.

***

Q. Do you remember having to tell unemployment that you were capable and available for work?
A. No.
Q. You don't remember now?
A. No, I didn't tell them that.
Q. Did you report to unemployment?
A. Yeah, I collected unemployment.
Q. While you were out – that wasn't my question. While you were out collecting unemployment, did you call in or did you submit paper forms?
A. I called in. I called it in, yes.

TR 67:16-68:23.

Due to Plaintiff's misrepresentation regarding his work history and disability status, Defendant had every right to deny his pension given that the pension application he signed provided that, if any statement is false, his application may be denied.

Moreover, federal common law grants the Plan the right to deny an application for benefits due to misrepresentations on the application form. While the Plan is governed by ERISA, because ERISA does not specifically address the effect of misrepresentation in a disability pension application, resort must be made to federal common law. See McDaniel v. Med. Life Ins. Co., 195 F.3d 999, 1002 (8th Cir. 1999) (noting that without a governing ERISA provision, federal common law controls); Mohamed v. Kerr, 53 F.3d 911, 913-14 (8th Cir.) (same), cert. denied, 516 U.S. 868 (1995); Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir. 1987) (noting that courts should fashion

federal substantive law to fill in gaps in ERISA's express provisions); see also 29 U.S.C. § 1144(a) (2000) (preempting state law in cases involving employee benefit plans); Tingle v. Pac. Mut. Ins. Co., 996 F.2d 105, 107-110 (5th Cir. 1993) (holding that state statute regarding misrepresentations in insurance applications is preempted by ERISA, and that in the absence of a specific ERISA provision, federal common law controls). In developing federal common law, courts may look to state law for guidance to the extent that state law does not conflict with ERISA or its underlying policies. See McDaniel, 195 F.3d at 1002; Mohamed, 53 F.3d at 913.

The Rhode Island General Assembly has addressed material misrepresentations in accident and sickness insurance policies. Contained within G.L. 1956 (1979 Reenactment) chapter 18 of title 27, which regulates accident and sickness insurance policies, § 27-18-16 states, "the falsity of any statement in the application for any policy covered by this chapter [bars] the right to recovery thereunder [if] such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." Several Rhode Island cases have examined the effect of a misstatement of fact in an application for insurance. Affleck v. Potomac Insurance Co., 49 R.I. 112, 140 A. 469 (1928); Leonard v. State Mutual Life Assurance Co., 24 R.I. 7, 51 A. 1049 (1902). In Guardian Life Ins. Co. v. Tillinghast, 512 A.2d 855, 859 (R.I. 1986), the Court held that, "even without the aid of a statute such as § 27-18-16, we have concluded that a material misrepresentation, even though innocently made, is a basis for rescinding a contract." Likewise, in Evora v. Henry, 559 A.2d 1038 (R.I. 1989), the Rhode Island Supreme Court held, with respect to fire-insurance applications, "if such representation

on an application is falsely made, it is a material misrepresentation sufficient to void a contract." Id. at 1040.

Many other courts have adopted the view that a material representation in an insurance application is grounds for denial of that application. See Countryside Casualty Co. v. Orr, 523 F.2d 870, 875 (8th Cir. 1975) (applying Arkansas law); New York Underwriters Insurance Co. v. Friedland, 439 F.2d 350, 350 (9th Cir. 1971) (applying Nevada law); New York Life Insurance Co. v. Kuhlenschmidt, 33 N.E.2d 340, 347 (Ind. 1941); Simon v. Government Employees Life Insurance Co. of New York, 79 A.D.2d 705, 706 (N.Y. 1980); Mutual of Omaha Insurance Company v. Dingus, 219 Va. 706, 713, 250 S.E.2d 352, 355 (1979). Indeed, even after the expiration of the contestability period, an insurer may deny a claim if the insured committed fraud in the policy application. Paul Revere Life Ins. Co. v. Haas, 644 A.2d 1098 (N.J. 1994). In denying the claim, an insurer need not show that the insured actually intended to deceive. Massachusetts Mut. Life Ins. Co. v. Manzo, 584 A.2d 190 (N.J. 1991). Even an innocent misrepresentation can constitute equitable fraud justifying denial. Metropolitan Life Ins. Co. v. Tarnowski, 20 A.2d 421 (N.J. 1941).

Therefore, the controlling inquiry in this case is whether there are any false representations on Plaintiff's pension application. Defendant has cited various misstatements made by Plaintiff on his pension application. Accordingly, unless Plaintiff can prove that the conflicting statements he has made are true, federal common law requires that this Court uphold Defendant's denial of a disability pension.

Finally, this Court should uphold Defendant's decision on the basis of Plaintiff's misrepresentations even though these misrepresentations were not discovered until after

the denial. The United States Supreme Court has held that a decision to terminate an employee may be upheld based on after-acquired evidence if the employer can demonstrate that he would have fired the employee because of that after-acquired information. McKennon v. Nashville Banner Publ. Co., 115 S. Ct. 879 (U.S. 1995). "It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated . . . in any event and upon lawful grounds." Id. at 886. Whether the employer has made such a showing is a question of fact. See Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1168 (6th Cir. 1996), see also McCray v. DPC Indus., Inc., 875 F. Supp. 384, 388 n.3 (E.D. Tex. 1995) ("A factual dispute may arise as to whether an employer would have terminated an employee based upon misconduct had the employer known of it.").

In Summers v. State Farm Mut. Auto. Ins. Co., 864 F.2d 700, 708 (10th Cir. 1988), the plaintiff argued that the after-acquired evidence should be ignored, but the court disagreed and responded with the oft quoted words:

> The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief, and plaintiff is in no better position.

Here, too, it would be pointless for this Court to order the trustees to reexamine Plaintiff's application when, due to Plaintiff's numerous misrepresentations, they can simply deny it. As indicated above, the pension application indicates that the Plan has the right to deny an application if it contains a false statement. Accordingly, if Defendant can prove it would have denied the application due to the misstatements, Plaintiff is without a remedy.

## II. PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Even assuming Plaintiff has standing to assert his claim, is a "participant" within the meaning of the Plan, and is not estopped from collecting a pension due to his misrepresentations, summary judgment for Plaintiff is improper because Plaintiff is not entitled to judgment as a matter of law. See United States ex. rel. D'Ambra Constr. Co., Inc. v. St. Paul Mercury Ins. Co., 24 F. Supp. 2d 218 (D.R.I. 1998). Contrary to Plaintiff's assertion, the Plan's decision to deny Plaintiff benefits was, as a matter of law, proper. The Trustees have complete discretion to determine was constitutes "total and permanent disability" under the terms of the Plan. Accordingly, unless that decision is arbitrary and capricious, it must stand. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Plaintiff cannot prove, as a matter of law, that the Trustees' decision was arbitrary and capricious. Accordingly, Plaintiff's Motion must be denied.

### A. The Court Must Review the Trustees' Decision under the Arbitrary and Capricious Standard

Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. See Restatement (Second) of Trusts § 187 (1959) ("Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion"). See also G. Bogert & G. Bogert, Law of Trusts and Trustees § 560, pp. 193-208 (2d rev. ed. 1980). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court held that a denial of benefits is to be reviewed under the "arbitrary and capricious" standard if the benefit plan gives the fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. "When

trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument under which they act." Id. at 111, quoting, Nichols v. Eaton, 91 U.S. 716, 724-725 (1875). Here, the following provisions of the Trust Agreement give the Trustees broad authority to "determine eligibility for benefits," see Firestone, 489 U.S. at 115.

> **4.1 ESTABLISHMENT OF RETIREMENT PROGRAM**
>
> The Trustees shall have *the discretion to determine* the character and amount of each such [retirement] benefit as *in their opinion* the Trust Fund is financially able to maintain. The Trustees *may in their discretion* provide any or all such benefits directly from the Trust Fund without obtaining policies of insurance for the same.
>
> **4.2 DETERMINATION OF ELIGIBILITY**
>
> The Trustees shall have *full authority to determine the requirements* with which an individual must comply in order to be eligible for benefits and determine all of the terms and conditions of eligibility of Eligible Persons for the purpose of this Trust; and also, *under such circumstances and conditions [as] they may determine.*
>
> **4.12 RULES AND REGULATIONS**
>
> The Trustees may prescribe such rules and regulations including rules of eligibility for benefits *as may in their discretion* be deemed proper or necessary for the sound and efficient administration of this Trust.
>
> **5.4 ADDITIONAL POWERS AND OBLIGATIONS OF THE TRUSTEES**
>
> In additional to the powers incorporated herein the Trustees shall have the following *powers and obligations*:
>
> ...
>
> 14. *To make rules and regulations* not [in]consistent [sic] with the terms hereof, and *to do all acts and take any and all other actions, whether or not expressly authorized herein,... all as the Trustees may deem necessary or advisable* for the protection of the Trust Fund or the proper administration of the Trust Fund.

(Emphases added). In Domingo Diaz v. Seafarers International Union, 13 F.3d 454 (1st Cir. 1994), the First Circuit was presented with language almost identical to that of the Carpenters' Trust Agreement. In Diaz, the trust documents provided:

> The Trustees shall without limitation have the power . . . to . . . formulate and adopt a pension program . . . and promulgate and establish rules . . . for . . . [its] operation . . . and in pursuance thereto (but without intent to limit such authority) formulate and establish conditions of eligibility . . . and all other matters which the Trustees in their discretion may deem necessary or proper to effectuate the purposes and intent of the pension program.

Id. at 457. As in the Carpenters' Trust Agreement, the trust agreement in Diaz also included a general clause granting the trustees the power to "do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general purposes of the Trust." Id..

The First Circuit held,

> we interpret the document's explicit, and broad, power to create "rules" governing "conditions of eligibility" as carrying with it a similarly broad implied power to interpret those rules. And, the existence of such a delegated power seems to be what Firestone had in mind when it called for "evidence" of a grant of discretionary authority to determine eligibility for benefits. Firestone, 489 U.S. at 111.

Id. See also Curtis v. Noel, 877 F.2d 159, 161 (1st Cir. 1989) (holding that plan language giving plan administrator power to determine "which Employees are eligible to participate in the Plan" indicates deferential standard of review of trustee eligibility decisions).

Plaintiff cites two cases in support of his contention that the Trust Agreement language does not rise to the level of a clear grant of discretionary authority. See Plaintiff's Memorandum of Law at 4-5 ("Plaintiff's Memo"). However, the language in both cases is similar to the language of the Trust Agreement, here. Fenton's language

provides, "[t]he Company shall have the power to adopt such rules and regulations as it may deem necessary and appropriate for the efficient operation and administration of the Plan." Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 90 (1st Cir. 2005). Sections 5.4 and 4.12 of the Trust Agreement provide the same power. In fact, Section 4.12 is more specific than the Fenton language in that it specifically grants the Trustees the power to adopt rules of eligibility *for benefits*. Moreover, the Pension Plan itself grants the Trustees broad authority to determine eligibility for a disability pension. In Section 1.6, the evidence required to prove "Total Disability" is "medical evidence satisfactory to the Trustees." The Trust Agreement and Pension Plan more than satisfy Firestone's requirement.

Moreover, in neither Fenton nor Leahy v. Raythoen, 315 F.3d 11 (1st Cir. 2002), does the Court hold that the language in those cases was *necessary* to invoke Firestone's arbitrary and capricious review. Rather, the Court merely found that the trust agreements granted discretion authority *sufficient* to invoke a lower standard of review.

Finally, Plaintiff erroneously claims that "the language in section 4.2 of the Trust Agreement makes no reference to the Trustees' authority to interpret the Plan or to make benefit determinations." See Plaintiff's Memo at 5. However, Section 4.2 explicitly grants the Trustees the "full authority" to determine eligibility for benefits. Moreover, no court has ever held that a Trust Agreement must explicitly grant trustees the power to *interpret* a plan. Indeed, the Court Diaz held that the power to create "rules" governing "conditions of eligibility" carries with it a similarly broad implied power to interpret those rules." 13 F.3d at 457.

Accordingly, because Sections 4.2, 4.12 and 5.4 of the Trust Agreement and Sections 1.6 and 1.7 of the Pension Plan grant the Trustees discretionary authority to determine eligibility for benefits, this Court must review the Trustees' decision to deny Plaintiff benefits under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115.

**B. The Trustees' Interpretation Was Not Arbitrary or Capricious**

Plaintiff has offered no evidence that the Trustees' interpretation and application of Section 1.7 was arbitrary and capricious. For purposes of reviewing benefit determinations by an ERISA plan administrator, the arbitrary and capricious standard is functionally equivalent to the abuse of discretion standard. See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000). A Court will "overturn [an administrator's] termination decision only if the [participant's] eligibility determination was unreasonable in light of the information available to it'") (internal citation omitted). Wright v. R. R. Donnelley & Sons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005), citing Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9 (1st Cir. 2003).

The evidence proves that the decision was based on a reasonable interpretation of the Plan. The Plan defines "Total and Permanent Disability" as Total Disability which is presumably permanent. Section 1.7. "Total Disability" means "a physical or mental condition, for which medical evidence satisfactory to the Trustees has been furnished, resulting in the Employee being unable to engage in any regular employment in the Carpenter and Joiner trade or in any other regular gainful employment." Section 1.6. The Plan does not define what constitutes medical evidence satisfactory to the Trustees.

The Trustees have full discretion to decide, on a case-by-case basis, what constitutes satisfactory medical evidence. They need not adopt a resolution or an amendment that defines "satisfactory medical evidence" prior to reviewing a disability pension application. However, consistent with their authority, the Trustees adopted a resolution so they would not have to review medical evidence on a case-by-case basis. The resolution, adopted on May 21, 2002, requires a determination of total and permanent disability by the Social Security Administration ("SSA") to support total disability under the Pension Fund for retirements after June 1, 2002.

The Trustees decided to interpret "satisfactory medical evidence" as a determination of total and permanent disability from the SSA. This interpretation was not "arbitrary or capricious." It was entirely reasonable for the Trustees to adopt an objective standard by which to determine disability. Indeed, it is commonplace for plans to utilize definitions of disability that are based on or rely on the SSA definition. See, e.g. Employee's Benefit Law, Bureau of National Affairs, Inc. at 485 (1991). "Almost by definition, group plans require generalization. They focus on verifiable benchmarks, sparing the need for in-depth investigation of the circumstances of each and every claim." Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 490 (1st Cir. 1989). That a seeming inequity may result on occasion is not fatal to the plan's legitimacy: after all, "the necessity to draw hard boundary lines, inevitably adversely affects some individuals who find themselves on the wrong side of a line." Rueda v. Seafarers Int'l Union of North America, 576 F.2d 939, 942 (1st Cir. 1978). As the First Circuit observed in Sprandel v. Sec'y of HHS, 838 F.2d 23, 27 (1st Cir. 1988) (per curiam),

> We acknowledge that the effect of the [social security] regulation seems unfair in the peculiar circumstances of this case. But that is endemic to

> lines - wherever they may be drawn, some people fall on the "other" side. If the . . . "line" were to be redrafted to account for the vagaries of [the beneficiary's] lot, we do not doubt that it would then chafe other, equally deserving recipients. Short of individualized consideration of the equities of each and every case - a course which would likely paralyze the system - there are no perfect solutions.

It was entirely reasonable for the Trustees' to "draw the line" by requiring a social security determination to prove total disability. The vast majority of participants applying for disability pensions are eligible for a social security determination. See Affidavit of Donald Lavin, attached hereto as Exhibit 4. That Plaintiff may be ineligible for benefits because of the SSA requirement does not make that requirement arbitrary and capricious. Moreover, as indicated above, a question of fact exists as to whether Plaintiff qualifies for social security benefits and, if not, whether his failure to qualify is due to his fraudulent failure to report his earnings. However, even if Plaintiff legitimately failed to qualify for a Social Security disability, he may still be able to obtain a finding a disability from the social security administration. See Affidavit of Donald Lavin, attached hereto as Exhibit 4. Plaintiff has offered no evidence that he even attempted to obtain this determination.

Plaintiff further alleges that the May 21, 2002 trustee resolution constitutes an amendment, rather than an interpretation, of the Plan. Assuming that the resolution constitutes an amendment, there is absolutely no doubt that the trustees' interpretation of the Plan was reasonable. If the Plan was amended to "require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002," then the trustees' denial of

Plaintiff's application due to his failure to provide a determination of total and permanent disability from Social Security Disability" is required by the plain language of the Plan.[2]

**Conclusion**

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment must be denied.

Respectfully submitted,
On behalf of the Plaintiffs,
By their attorney,

Marc B. Gursky, Esq. #2818
Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702

Dated: May 18, 2006

CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail, postage prepaid, to Catherine A. Syner, VETTER & WHITE, 20 Washington Place, Providence, RI 02903 on this 19th day of May, 2006.

[2] Plaintiff erroneously alleges that the Plan was not "formally amended;" therefore, the social security determination requirement did not become part of the Plan. On the contrary, the "amendment" complies with the Plan's amendment process. Section 10.1 of the Plan provides, "[a]ny amendment shall be made pursuant to a resolution duly adopted by the Trustees." There exists no other requirement for amendment of the Plan. On November 29, 2004, the Trustees duly adopted a resolution that requires a determination by the SSA to support total disability. See Exhibit D, attached to Plaintiff's Motion for Summary Judgment. This resolution constitutes an amendment to the Plan under section 10.1.