UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BARRY M. SOUZA           :
                         :
    v.                   :     C.A. No. 05-186S
                         :
RHODE ISLAND CARPENTERS' :
PENSION PLAN             :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before the Court is Plaintiff Barry Souza's Motion for Summary Judgment (Document No. 22) pursuant to Fed. R. Civ. P. 56 as to Count I of his Complaint. Plaintiff brings this two-count action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. In Count I, Plaintiff contends that the decision of the Rhode Island Carpenters' Pension Plan (the "Plan") to deny a disability pension to him was incorrect and he seeks a judgment awarding a disability pension to him pursuant to 29 U.S.C. § 1132(a)(1)(B). Compl., ¶¶ 21-22, Prayer for Relief 1. In Count II, Plaintiff contends that the Plan did not respond to his request for information in a timely manner and he seeks statutory damages of $100.00 per day pursuant to 29 U.S.C. § 1132(c)(3). Id., ¶¶ 25-26, Prayer for Relief 2. Plaintiff's Motion has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on June 14, 2006. For the reasons set forth below, this Court recommends that Plaintiff's Motion be GRANTED.

## Facts

Plaintiff is a member of the United Brotherhood of Carpenters and Joiners of America, Local 94 (the "Carpenters' Union") and a participant in the Plan. Aff. of Souza, ¶ 2; Ans., ¶ 5. On or about October 1, 2004, Plaintiff applied for a disability pension under the Plan. Ans., ¶ 8. The application, signed by Plaintiff on September 9, 2004, indicates that Plaintiff became disabled on March 9, 2002 due to a left ankle fracture suffered in a fall from scaffolding and related knee pain. Aff. of Souza, ¶ 9. The application also indicates that Plaintiff did not apply for a Social Security Disability Pension because he did "not have significant quarters to qualify for Social Security disability." Aff. of Souza, Ex. C at pp. 18-21.[1]

The Plan's Board of Trustees considered Plaintiff's disability pension application at a Board meeting held on October 19, 2004. Id. at p. 8. By letter dated October 27, 2004, Plaintiff was notified by Donald Lavin, the Plan's Co-administrator, that his request for a disability pension was denied. Id. Plaintiff was advised that the Board "require[s] a determination of total and permanent disability from Social Security Disability. If Social Security Disability will give a medical determination that you are disabled, the Board may approve a Disability pension at that time." Id.

In response, Plaintiff's attorney at that time advised Mr. Lavin by letter dated November 11, 2004 that Plaintiff "cannot get a determination from Social Security concerning his disability because he does not have sufficient quarters to qualify for Social Security. He was self-employed for a time

---

[1] In order to be eligible for disability insurance benefits under the Social Security Act, an individual generally must have at least twenty quarters of covered employment in the forty quarters preceding the onset of disability. 42 U.S.C. §§ 416(i)(3) and 423(c)(1)(B).

and did not contribute to Social Security."[2] Aff. of Souza, Ex. C at p. 3. The attorney also requested that the Plan "evaluate [Plaintiff's] eligibility for disability on its own as there cannot be a resort to Social Security Disability benefits." Id. Mr. Lavin responded on November 29, 2004, by informing the attorney that the Board of Trustees, at its May 21, 2002 meeting, "voted to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002." Id. at p. 2. On May 2, 2005, Plaintiff commenced this litigation under ERISA, 29 U.S.C. § 1132(a)(1)(b), seeking an award of a disability pension under the Plan. Plaintiff now moves for summary judgment on Count I (1) declaring that the Board's denial of his disability pension application was incorrect and in violation of the terms of the Plan, and (2) remanding the case to the Plan for a "full review" of his disability pension benefit claim. Plaintiff fails to address Count II in any fashion.

Under the Plan (Section 3.4), a participant is "entitled to retire on a disability pension if he becomes Totally and Permanently Disabled before age 62" and meets certain service requirements. Aff. of Souza, Ex. A at p. 30. "Total Disability" is defined under the Plan (Section 1.6) as a "physical or mental condition, for which medical evidence satisfactory to the Trustees has been furnished, resulting in the employee being unable to engage in any regular employment in the Carpenter and Joiner trade or in any other regular gainful employment...." Id. at p. 1. "Total and Permanent Disability" is defined under the Plan (Section 1.7) as Total Disability which is presumably permanent. Id. at p. 2. The Plan also provides (Section 1.7) that the Trustees "shall

---

[2] Self-employment does not excuse an individual from contributing to Social Security. In the employment context, an employee's wages are subject to a total FICA or Social Security tax of 12.4% (6.2% paid by the employee and 6.2% paid by the employer). 26 U.S.C. §§ 3101(a), 3111(a). Similarly, self-employed individuals are required to pay a self-employment tax which has a Social Security component equal to 12.4% of net earnings from self-employment. 26 U.S.C. §§ 1401(a), 1402(b); and 42 U.S.C. § 411.

accept" a Social Security Disability benefit determination "as prima facie proof of total and permanent disability." Id. At a meeting on May 21, 2002, the Trustees "discussed what evidence is sufficient to support total and permanent disability" under the Plan. Aff. of Souza, Ex. D. After such discussion, a motion was made, seconded and "adopted" "to require a determination of total and permanent disability by the Social Security Administration to support total disability under the Pension Fund for retirements after June 1, 2002." Id. This requirement was the basis for the decision to deny Plaintiff's disability pension application. The Plan contends that its action on May 21, 2002 constituted a valid amendment to the Plan. Plaintiff contends that it was not a valid amendment and that the requirement cannot properly be applied to his application since it is contrary to the terms of the Plan.

## Standard of Review

A district court, when reviewing a plan administrator's decision under ERISA, is generally required to undertake a de novo review. Allen v. Adage, Inc., 967 F.2d 695, 697-98 (1st Cir. 1992). If, however, by its terms, the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility of benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion...." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998). Plaintiff contends that this case is subject to de novo review while the Plan argues that it is governed by the "arbitrary and capricious" standard of review.

The arbitrary and capricious standard of review applies where the benefits plan gives the trustees "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Plaintiff points to Section 4.2 of the Trust Agreement and argues that it does not rise to the level of a clear grant of

discretionary authority sufficient to trigger deferential review. The Plan contends that Plaintiff inappropriately focuses solely on Section 4.2 and ignores the totality of the grant of discretionary authority contained in that section as well as Sections 4.1, 4.12 and 5.4. This Court agrees that the provisions of the Trust Agreement relied upon by the Plan give the Trustees discretionary authority to determine eligibility for benefits and to construe the Plan as provided in Firestone. See Diaz v. Seafarers Int'l Union, 13 F.3d 454, 457 (1st Cir. 1994) ("[W]e interpret the document's explicit, and broad, power to create 'rules' governing 'conditions of eligibility' as carrying with it a similarly broad implied power to interpret those rules."). The Court therefore applies the arbitrary and capricious standard of review.

Thus, the operative inquiry is whether the administrative record before the plan administrator "could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003), citing Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). A decision to deny benefits to a beneficiary will be upheld if the administrator's decision "[was] reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004). Evidence is substantial when it is "reasonably sufficient to support a conclusion...." Id. Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision. See Gannon, 360 F.3d at 213; see also Doyle, 144 F.3d at 184 ("[s]ufficiency, of course, does not disappear merely by reason of contradictory evidence.").

Thus, the parties may ask the court to decide the case on the basis of the administrative record by way of a motion for summary judgment. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003). This is not to be confused with the typical pre-trial summary judgment

procedure in which the court must consider the facts in the light most favorable to the non-moving party. Id. Rather, under ERISA, "the rationality standard tends to resolve doubts in favor of the administrator." Id.

## Discussion

### A.  Standing

The Plan contends that summary judgment is not appropriate because there is a question of fact as to whether Plaintiff has standing to bring this suit. In particular, the Plan argues that Plaintiff has offered no evidence that his claimed injury, i.e., the disability pension denial, was casually related to the challenged May 21, 2002 action of the Trustees because there is no evidence that Plaintiff (1) applied for a Social Security disability benefits determination; (2) cannot obtain such a determination from Social Security; or (3) obtained an unfavorable determination from Social Security which he unsuccessfully appealed. Plaintiff counters that, as a Plan participant, he has statutory standing to challenge a denial of benefits. This Court agrees with Plaintiff.

Plaintiff has brought suit under § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)). "Whether an employee has standing to enforce a claim of entitlement to plan benefits under ERISA § 502(a)(1)(B) 'depends, not on whether he is actually entitled to benefit, but on whether he has a colorable claim that he will prevail in a suit for benefits.'" Beniquez v. Pfizer Corp., No. Civ. 05-1269(HL), 2006 WL 752994 (D.P.R. March 21, 2006), quoting Edes v. Verizon Communications, Inc., 417 F.3d 133, 137 (1st Cir. 2005). Although the Plan asserts that there is a question of fact as to Plaintiff's status as a "participant," the Plan did not deny Plaintiff's application on that ground and it has admitted, as least for the purposes of this Motion, that Plaintiff was a participant. See Answer,

¶ 5. See also Eggert v. Merrimac Paper Co., Inc. Leveraged ESOP, 311 F. Supp. 2d. 245, 251-52 (D. Mass. 2004) (status as a plan participant or beneficiary confers standing to sue under ERISA).

The Plan's primary argument is that Plaintiff lacks standing because he cannot demonstrate that he was harmed by the Trustees' May 21, 2002 action. See Comfort v. Lynn Sch. Comm., 418 F.3d 1, 10 (1st Cir. 2005) (standing requires "injury in fact" arising out of the challenged action). The Plan's argument is unconvincing. It is undisputed that the Plan denied Plaintiff's disability pension application based on the May 21, 2002 action because he did not have "a determination of total and permanent disability from Social Security Disability." Aff. of Souza, Ex. C at p. 8. Thus, there is a direct causal relationship between Plaintiff's claimed injury (the denial of a disability pension) and the challenged action of the Trustees (the May 21, 2002 resolution). While it is true that there is no evidence that Plaintiff ever applied for a Social Security determination, there is sufficient evidence that such application would have been futile. Plaintiff's attorney at that time, a Social Security practitioner, advised the Plan that Plaintiff could not obtain such a determination. In addition, as support, he provided the Plan with a statement from Social Security dated April 15, 2002 which indicated that Plaintiff's "record shows [he did] not have enough credits in the right time period" to qualify for disability benefits. Aff. of Souza, Ex. C at pp. 4-7. Finally, the Plan's administrators prepared a summary of Plaintiff's application for the October 19, 2004 meeting of the Trustees. The summary advised the Trustees that (1) Plaintiff "cannot receive a Date of Entitlement from Social Security Disability as he needs 4 more credits to qualify for a Disability pension with them"; and (2) "[a]s of June 1, 2002 the Plan requires a Disability Award from Social Security Disability." Aff. of Souza, Ex. C at p. 31.

The Plan also contends that even if Plaintiff was not eligible for Social Security benefits, he "may have been able to obtain a determination of disability from SSA." Def.'s Mem. in Supp., p. 5. (Document No. 26). The Plan does not, however, cite to any legal authority for this speculative assertion that the Social Security Administration ("SSA") "may" provide an advisory disability determination to an applicant who fails to meet the threshold eligibility requirement of insured status. The only support offered by the Plan is Mr. Lavin's Affidavit in which he recalls "at least one individual who did not have enough credits to obtain a social security disability pension but, nonetheless, was able to obtain a determination of medical disability from the [SSA]." See id., Ex. 4 (Aff. of Lavin) at ¶ 5. Attached to Mr. Lavin's Affidavit is a one-page document which appears to be one page of a multiple page SSA determination letter. See id. (Aff. of Lavin) at Ex. 1. The document indicates that the claimant met the medical requirements for disability benefits and that no decision had yet been made about whether the "non-medical requirements" were met for the claim. Id. The claimant's name is redacted, and there is no information contained in the document or Mr. Lavin's Affidavit indicating that the circumstances of the example case are comparable to Plaintiff's situation. Further, Mr. Lavin does not indicate that he has personal knowledge of the underlying circumstances of the example case or is capable of authenticating the document as an official SSA determination letter. This evidence is simply not competent to support the Plan's standing argument.

**B.    The May 21, 2002 Action**

At a Board meeting on May 21, 2002, the Plan's Trustees discussed "what evidence is sufficient to support total and permanent disability." Aff. of Souza, Ex. D. After such discussion, a motion and second, the Trustees "adopted" "to require a determination of total and permanent

disability by the [SSA] to support total disability under the Pension Fund for retirements after June 1, 2002." Id. Plaintiff contends that the Plan acted arbitrarily and capriciously in denying his disability pension application based solely on the May 21, 2002 resolution. Plaintiff argues that the resolution is an invalid Plan amendment and, in fact, violates the express terms of the Plan. At the hearing, the Plan's attorney advised the Court that the resolution was "absolutely" an amendment to the Plan, and argued that the Plan did not act in an arbitrary and capricious manner in applying this purported amendment to deny Plaintiff's disability pension application.

Under ERISA, every employee benefit plan must provide a procedure for amending the plan, and identify those with authority to do so. 29 U.S.C. § 1102(b)(3). This requirement is intended to ensure that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (citation omitted). Section 10.1 of the Plan at issue in this case provides that the Trustees reserve the right to amend the Plan, provided the amendment does not otherwise conflict with the terms of the Trust and is made pursuant to a resolution duly adopted by the Trustees. Aff. of Souza, Ex. A at p. 62.

While Plaintiff does not dispute that the May 21, 2002 action was "duly adopted" by the Trustees, he contends that the action is simply not a Plan amendment. This Court agrees for the following reasons. The May 21, 2002 action was taken after discussion by the Trustees of "what evidence is sufficient to support total and permanent disability." Aff. of Souza, Ex. D. Generally, an amendment must indicate a "clear manifestation of intent" to alter an ERISA plan. Biggers v. Wittek Indus., Inc., 4 F.3d 291, 296 (4th Cir. 1993). The May 21, 2002 action makes no mention of amending the Plan or the specific section(s) to be amended. See Jordan v. E.I. du Pont de Nemours

-9-

& Co., 867 F. Supp. 1238, 1248 (D.S.C. 1994). It is not signed by the Trustees, and it gives no reasonable notice to participants of any specific changes to the terms of the Plan. See Curtiss-Wright, 514 U.S. at 83. Rather than amending the terms of the Plan, the May 21, 2002 action is directed at a procedural issue, i.e., what evidence is sufficient to support a finding of "total disability."

Moreover, the May 21, 2002 action is completely inconsistent with prior formal Plan amendments adopted by the Trustees. See Aff. of Souza, ¶ 8 and Ex. A. Those prior amendments specifically reference the Trustees' power of amendment under Section 10.1 of the Plan, identify the Plan section to be amended and set forth the exact language as amended. Id. They are also dated and individually signed by the Trustees. Id. The May 21, 2002 action does not contain any of these formalities. Further, it is unclear whether the May 21, 2002 action was intended to apply to the definition of "total and permanent disability" (Section 1.7) or "total disability" (Section 1.6).

In addition to not constituting a valid Plan amendment, the May 21, 2002 action is not a valid interpretation of the Plan since it contradicts the terms of the Plan. It does not purport to interpret Plan language but rather imposes a new eligibility requirement, i.e., an SSA disability determination. The May 21, 2002 action requires "a determination of total and permanent disability by the [SSA] to support total disability under the Pension Fund for retirements after June 1, 2002." Aff. of Souza, Ex. D. (emphasis added). Section 1.6 of the Plan defines "total disability" as a "physical or mental condition, for which medical evidence satisfactory to the Trustees has been furnished, resulting in the Employee being unable to engage in [certain] employment...." Aff. of Souza, Ex. A at pp. 1-2. (emphasis added).

While an SSA determination of disability may constitute "medical evidence" of total disability, an SSA determination based on insured status or some other threshold non-medical eligibility criteria is not "medical evidence." Further, the May 21, 2002 action effectively precludes a participant from furnishing medical evidence other than an SSA determination to prove total disability because an SSA determination is "required." However, Section 1.6 permits a participant to furnish medical evidence in support of his/her application, and allows the Trustees to determine if such medical evidence is satisfactory. Thus, the May 21, 2002 action contradicts Section 1.6.

The May 21, 2002 action also contradicts Section 1.7. Section 1.7 defines "total and permanent disability" and notes that the Trustees "shall accept" an SSA disability determination as "prima facie proof." Prima facie proof is evidence sufficient to establish a fact or raise a presumption unless disproved or rebutted. See Virginia v. Black, 538 U.S. 343, 368-70 (2003), citing Black's Law Dictionary 1190 (6th Ed. 1990). It is not unrebuttable or conclusive evidence. Thus, under Section 1.7, the existence of an SSA disability determination essentially creates a rebuttable presumption of "total and permanent disability." It is not, however, mandated as a condition of receiving a disability pension by either Section 1.7 or Section 1.6. The May 21, 2002 action regarding "what evidence is sufficient to support total and permanent disability" contradicts the express terms of the Plan.

"Discretion to interpret a plan...does not include the authority to add eligibility requirements to the plan." Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004) (citation omitted). In determining whether a plan interpretation or application is "arbitrary and capricious," the Court must first look to the "plain language of the Plan." Canseco v. Constr. Laborers Pension Trust, 93 F.3d 600, 606 (9th Cir. 1996). "[T]rustees abuse their discretion if they...construe provisions of [a] plan

-11-

in a way that clearly conflicts with the plain language of the plan." Johnson v. Trustees of the Western Conf. of Teamsters Pension Funds, 879 F.2d 651, 654 (9th Cir. 1989) (citation omitted). See also Swaback v. Am. Info. Tech. Corp., 103 F.3d 535, 541-42 (7th Cir. 1996) (plan acted arbitrarily and capriciously when it imposed "additional, unenumerated requirements" on a participant). Here, since the May 21, 2002 action was not a proper amendment to the Plan and it contradicts with the plain language of the Plan, the Plan acted arbitrarily and capriciously when it applied the May 21, 2002 action to deny Plaintiff's disability pension application.

### C.  Estoppel

The Plan contends that summary judgment is inappropriate because there is an issue of fact as to whether Plaintiff made false statements on his disability pension application. If so, the Plan contends that Plaintiff should be estopped from obtaining a disability pension. As noted in Section A supra, the Plan also contends that an issue of fact exists as to whether Plaintiff is a Plan participant and eligible for a disability pension. Plaintiff argues that the Plan cannot rely on these "post hac justifications" for denying his disability pension application. See 29 U.S.C. § 1133; and Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 129-130 (1st Cir. 2004) (plan may not rely in litigation on reasons for denial not raised in claim review process).

This Court agrees that the Plan should not be permitted to defend Plaintiff's current claim in this litigation based on post hac reasoning and after-acquired evidence. See Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005) ("The decision to which judicial review is addressed is the final ERISA administrative decision."). Plaintiff does not, in his Motion, seek a retroactive award of disability pension benefits. Rather, Plaintiff seeks a remand back to the Plan for a "full review of his disability pension benefit claim." A reviewing court has "considerable

discretion" to fashion an appropriate remedy, usually either remand for reevaluation or a retroactive award of benefits, when disability benefits are wrongfully denied. Beauvais v. Citizens Fin. Group, 418 F. Supp. 2d 22, 32 (D.R.I. 2006) (citations omitted). This Court agrees that this matter should be remanded to the Plan so that it may undertake a "full review" of Plaintiff's entitlement to a disability pension under the terms of the Plan as opposed to the terms of the May 21, 2002 action. See Unum Life Ins. Co. of Am. v. Cappello, 278 F. Supp. 2d 228 (D.R.I. 2003). Plaintiff's disability pension application was previously denied solely on the basis of the May 21, 2002 action. On remand, the Plan is entitled to undertake a "full review" as to whether Plaintiff is otherwise eligible for and entitled to receive a "Total and Permanent Disability Pension" under Section 3.4 of the Plan.

## Conclusion

For the reasons discussed above, this Court recommends that Plaintiff's Motion for Summary Judgment (Document No. 22) be GRANTED and the matter remanded to the Plan for further "full review" of Plaintiff's disability pension application as discussed herein.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

/s/ LINCOLN D. ALMOND
LINCOLN D. ALMOND
United States Magistrate Judge
July 13, 2006