**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BARRY M. SOUZA, *Plaintiff,* | : | |
| v. | : | C.A. No. 05-186S |
| RHODE ISLAND CARPENTERS PENSION PLAN, *Defendant.* | : | |

**DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pursuant to Fed. R. Civ. P. 72(b), notice is hereby given that Defendant Rhode Island Carpenters Pension Plan appeals to the United States District Court for the District of Rhode Island from Magistrate Judge Lincoln Almond's Report and Recommendation, entered in this action on July 13, 2006, and received by Defendant on July 14, 2006, recommending that Plaintiff's Motion for Summary Judgment be granted. As reasons therefore, Defendant submits the accompanying Memorandum of Law.

Respectfully submitted,
On behalf of the Defendant,
By its attorneys,

Marc B. Gursky, Esq. #2818
Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702

## CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail, postage prepaid, to Catherine A. Syner, VETTER & WHITE, 20 Washington Place, Providence, RI 02903 on this 27 day of July, 2006.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BARRY M. SOUZA, *Plaintiff*, | : | |
| v. | : | C.A. No. 05-186S |
| RHODE ISLAND CARPENTERS PENSION PLAN, *Defendant*. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

NOW COMES Defendant Rhode Island Carpenters Pension Plan, ("the Plan" or "Defendant") and hereby appeals to the United States District Court for the District of Rhode Island from Magistrate Judge Lincoln Almond's Report and Recommendation ("Decision"), entered in this action on July 13, 2006, and received by Defendant on July 14, 2006, recommending that Plaintiff's Motion for Summary Judgment be granted. In support of its Objection to the Magistrate Judge's Report and Recommendation, Defendant submits this Memorandum of Law.

**Statement of the Case**

Defendant is an employee pension plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2). The Plan was created to provide pension benefits to eligible participants. On May 21, 2002, the Plan's Trustees duly adopted a resolution that amended the Plan to require a determination of disability by the Social Security Administration to support total disability. In or about October, 2004, Plaintiff applied for disability pension benefits under the Plan. The Plan, through its Board of Trustees, denied Plaintiff's request because Plaintiff failed to meet the

definition of "total and permanent disability." Plaintiff then filed the instant action seeking, *inter alia*, an award of disability pension benefits.

On or about April 5, 2006, Plaintiff filed a Motion for Summary Judgment against Defendant. Defendant filed an Objection to the Motion and a hearing was held before Magistrate Judge Lincoln Almond on June 14, 2006. At the hearing, Defendant raised several issues of material fact, including whether Plaintiff has standing to assert his claim. Defendant also presented evidence that Plan was properly amended to require a determination of disability from the Social Security Administration. Finally, the Plan argued that, even if the Trustee resolution is not considered an amendment, because the Plan vests the Trustees with "full authority to determine [eligibility] requirements," and its interpretation was not arbitrary and capricious, the Court must defer to its decision.

Plaintiff (erroneously) argued that the trustees' "interpretation" of total and permanent disability imposes an eligibility requirement not found in the Plan documents. See Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment ("Plaintiff's Memo") at 8-10. Plaintiff also argued that the Fund's interpretation of the Plan in effect amended the Plan's definition of total and permanent disability. Id. at 11-13. Finally, Plaintiff argued that the Plan was not properly amended. Id. at 13-14.

The Magistrate Judge held that the Plan did not provide sufficient evidence to support its claim that Plaintiff lacks standing to pursue his claim. He also found that the May 21, 2002 trustee resolution does not constitute an amendment to the Plan because, "it is not signed by the Trustees, and it gives no reasonable notice to participants of any specific changes to the terms of the Plan." Decision at 10. Finally, the Magistrate Judge found that the Trustee resolution is an invalid interpretation of the Plan because 1) the trustees only have the discretion to determine

was constitutes "medical evidence" of total disability and 2) requiring a finding of disability by the SSA contradicts with the Plan language that provides a SSA determination will serve as "prima facie proof" of disability. Id. at 11.

**Argument In Support Of Objection**

The Magistrate Judge's decision erroneously puts the burden on the Plan to prove (not simply create a question of fact, but prove) that Plaintiff lacks standing. It also alters the Plan by requiring the Trustees to take additional steps to amend the Plan not required by either the Trust Agreement or ERISA. Finally, the decision constitutes a judicial modification of the Plan. For each of these reasons, the Report and Recommendation must be rejected.

## I. THE MAGISTRATE JUDGE ERRONOUSLY PLACED THE BURDEN ON THE PLAN TO PROVE THAT STANDING DOES NOT EXIST

The Magistrate Judge held that, because Plaintiff is a Plan participant, he has automatic statutory standing to pursue his claim. While statutory standing under § 502(a)(1)(B) of ERISA is a necessary prerequisite for filing suit, the inquiry cannot stop there. Plaintiff must still prove constitutional standing. As the United States Supreme court has frequently explained, a plaintiff must meet three requirements in order to establish Article III standing. See, e.g., Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167 (2000) (slip op., at 9). First, he must demonstrate "injury in fact" -- a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (internal quotation marks and citation omitted). Second, he must establish causation -- a "fairly... traceable" connection between the alleged injury in fact and the alleged conduct of the defendant. Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41 (1976). Last, he must demonstrate redressability -- a "substantial likelihood" that the requested relief will remedy the

alleged injury in fact. Id. at 45. "These requirements together constitute the 'irreducible constitutional minimum' of standing, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), which is an 'essential and unchanging part' of Article III's case-or-controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (U.S. 2000).

In Herman v. Central States, Southeast and Southwest Areas Pension Fund, 2003 U.S. Dist. LEXIS 18732, the Court held that some of the retired plaintiffs who sought pension benefits did not have standing to challenge the Plan amendment at issue even though they were plan participants because they did not show (1) an injury that is concrete, particularized and actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendants' action; and (3) that a favorable decision is likely to redress the injury. Id. at *7. Here, the Magistrate Judge erred in failing to consider whether Plaintiff has standing under Article III of the United States Constitution to bring the instant action.

Moreover, Plaintiff bears the burden of proving that he has standing. Ramirez v. Ramos, 438 F.3d 92, 100 (1st Cir. 2006). In order to defeat summary judgment, Defendant need only produce evidence that, when viewed in the light most favorable to Defendant, creates a question of fact regarding any of the foregoing criteria. Even if, as the Magistrate Judge found, Plaintiff produced *evidence of standing*, or even "sufficient evidence of standing," because the Magistrate Judge did not and could not find that, when viewing the facts in the light most favorable to Defendant, no reasonable jury could find for Defendant, summary judgment must be denied.

Plaintiff's alleged injury is the wrongful denial of a disability pension due to the trustees' adoption and application of the May 21, 2002 resolution. Thus, to establish standing, Plaintiff must prove that his injury was causally related to the resolution. To do this, he must prove either that (1) he cannot obtain a social security determination or (2) that he obtained an unfavorable determination by the SSA, which he thereafter unsuccessfully appealed.

Defendant produced evidence at hearing that, when viewed in the light most favorable to Defendant, created a question of fact as to whether Defendant could obtain a social security determination. Obviously, if Defendant could obtain the determination, but, for one reason or another, did not, he would not have standing to challenge the amendment. Participants cannot simply bring suit to challenge a trustee resolution if that resolution has no impact on them. Because there is a question of fact as to whether Plaintiff was harmed by the resolution and, thus, has standing under Article III of the United States Constitution, summary judgment is inappropriate.

## II. THE MAGISTRATE JUDGE'S DECISION MISINTERPRETS ERISA

Section 402(b)(3) of ERISA requires two things: a procedure for amending a plan and a procedure for identifying the persons who have authority to amend the plan. See 29 U.S.C. § 1102(b)(3). There is no dispute that the Plan satisfies both of these requirements. However, the Magistrate Judge went on to create additional requirements not included in section 402(b)(3). Citing Curtiss-Wright Corp. v Schoonejongen, 514 U.S. 73, 83 (1995), he found that the trustee resolution does not constitute an amendment because "it is not signed by the Trustees, and it gives no reasonable notice to participants of any specific changes to the term of the Plan." Decision at 10. However, neither the Plan, nor the Trust, nor section 402(b)(3) of ERISA require that amendments be signed by the Trustees. Nor does the promulgation of the amendment, or

lack thereof, have any impact on its validity. In Curtiss-Wright, on the exact page cited by the Magistrate Judge in his decision, the Court stated,

> Respondents argue that § 402(b)(3) was intended not only to ensure that every plan has an amendment procedure, but also to guarantee that the procedure conveys enough detail to enable beneficiaries to learn their rights and obligations under the plan at any time. Respondents are no doubt right that one of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time. *But ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time*, a scheme that is built around reliance on the face of written plan documents.
>
> The basis of that scheme is another of ERISA's core functional requirements, that "every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). In the words of the key congressional report, "[a] written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." H. R. Rep. No. 93-1280, p. 297 (1974). *ERISA gives effect to this "written plan documents" scheme through a comprehensive set of "reporting and disclosure" requirements, see 29 U.S.C. §§ 1021-1031, of which § 402(b)(3) is not part*...
>
> This may not be a foolproof informational scheme, although it is quite thorough. Either way, it is the scheme that Congress devised. *And we do not think Congress intended it to be supplemented by a far-away provision in another part of the statute*, least of all in a way that would lead to improbable results.

Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83-84 (U.S. 1995) (emphasis added). Likewise, in Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 742 (8th Cir. 2002), plaintiff argued that the plan amendments were void because they did not contain signatures. He grounded his theory on ERISA's goal of enabling employees to determine their rights and obligations under a plan by examining the plan documents. The Court was not persuaded.

> [Plaintiff] urges a statutory goal that the Supreme Court *has rejected under section 402(b)(3)*. In Curtiss-Wright, plaintiffs argued that section 402(b)(3) was enacted to ensure that every plan has an amendment procedure and to enable participants and beneficiaries to examine a single plan document for the purpose

> of ascertaining their rights and obligations. 514 U.S. at 83. The Court agreed as to the first purpose *but disagreed as to the second.* 514 U.S. at 82.

Id. (Emphasis added). Thus, whether the participants have notice of the amendment has no bearing on the viability of the amendment. Rather, it goes to whether the Plan satisfied the notice and disclosure requirements set forth in ERISA.[1] See also Lettrich v. J.C. Penney Co., 90 Fed. Appx. 604, 608 (3d Cir. 2004) (general rule is that plan amendments are valid in spite of inadequate notice).

Moreover, in Horn v. Berdon, Inc. Defined Ben. Pension Plan, 938 F.2d 125, 127 (9th Cir. 1991), the Court held that the resolution adopted by the Board of Trustees was an amendment *even though it did not specifically indicate that it was an amendment.*

> While no document entitled "Amendment to Pension Plan" was issued allotting the Plan surplus to the employees, the Board's resolution empowering the corporation's officers "to distribute all of the assets," and requiring "the assets of [the Plan] be distributed to each participant . . .", purported to do precisely that....Because plaintiffs Horn and Gordon had the power both to adopt Board resolutions and to amend the Plan, the only difference between a Plan amendment and a Board resolution is a matter purely of form - the title of the document.

Id.

Likewise, in Johannssen v. Dist. No. 1 - Pacific Coast Dist., MEBA Pension Plan, 136 F. Supp. 2d 480, 493 (D. Md. 2001), the Court held,

> Where, as here, the employer has the authority to amend a pension plan and the employer amends the plan *through a resolution or vote of a board of directors*

[1] Plaintiff did not allege in his Summary Judgment Motion, nor argue at hearing, that he failed to receive notice of the amendment. Rather, he argues that the amendment was invalid. However, even if the Plan failed to give notice to Plaintiff, "participants may recover the benefits that were available under the plan before the amendment [only] if they can make a showing of "bad faith, active concealment, or detrimental reliance," see Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 569 (7th Cir. 1995), or can "show active concealment of the amendment ... or some significant reliance upon, or possible prejudice flowing from the lack of notice," see Godwin v. Sun Life Assur. Co. of Canada, 980 F.2d 323, 328 (5th Cir. 1992) (internal quotations omitted), or demonstrate cognizable prejudice from the the Plan's failure to fully comply with ERISA's disclosure requirements, see Veilleux v. Atochem North Am., Inc., 929 F.2d 74, 76 (2d Cir. 1991) (per curiam). Here, Plaintiff has not alleged bed faith, active concealment or detrimental reliance.

> (or, as in this case, the District Executive Committee), such an amendment is valid. See Yenyo v. Communications Satellite Corp., 899 F. Supp. 1423, 1425 (D. Md. 1995) (where plan document vested the employer with the authority to amend the plan and the employees board of directors adopted the amendment, the amendment was valid); Averhart v. U.S. WEST Mgmt. Pension Plan, 46 F.3d 1480, 1489 (10th Cir. 1994) (where the pension plan expressly provides for amendments by the Employee Benefit Committee subject to approval of the board of directors, amendment was valid *even though the board of directors did not pass a formal resolution authorizing the amendment*); Spacek v. Trustees of the Agreement of Trust for Maritime Assoc. - I.L.A. Pension Plan, 923 F. Supp. 960, 962 (S.D. Tex. 1996) (where plan document authorized the board of trustees to amend the plan, the amendment was valid even if the board did not comply with its own internal procedures in amending the plan), rev'd on other grounds, 134 F.3d 283 (5th Cir. 1998). Thus, when MEBA/NMU's governing body, the DEC, approved the written resolution amending the terms of the Plan to grant pension credits to participants for past service with specific unions and their affiliates, and voted on October 20, 1992, to ratify the written resolution, the Amendment became binding on the Plan.

Id. (Emphasis added).

Moreover, the fact that the May 21, 2002 amendment was "inconsistent with prior formal Plan amendments" does not mean 1) that it is inconsistent with all prior amendments or 2) that the inconsistency invalidates the amendment. In Spacek v. Trustees of the Agreement of Trust for Maritime Assoc. - I.L.A. Pension Plan, 923 F. Supp. at 962, the Court held that where the plan document authorized the board of trustees to amend the plan, the amendment was valid *even if the board did not comply with its own internal procedures* in amending the plan. Here, the mere fact that former plan trustees have "specifically reference[d] the Trustees' power of amendment" in the past does mean that all amendments must "specifically reference the Trustees' power of amendment." If so, this would allow the Trustees to amend the plan without any type of trustee resolution.

Finally, neither the Plan nor ERISA requires that an amendment be signed by the trustees. Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 742 (8th Cir. 2002)

(amendment is valid because, contrary to plaintiff's contention, the policy for amending the Plan did not require a signature on amendments, much less an original signature). For all of the foregoing reasons, the Magistrate Judge erred in holding that no question of fact exists regarding the validity of the amendment.

## III. THE MAGISTRATE JUDGE'S DECISION JUDICIALLY MODIFIES THE PLAN

The Magistrate Judge's decision supplants the Trustees' determination of disability with his own. It allows the participants to determine what evidence they may submit to prove a disability. Despite the Plan's delegation to the Trustees to determine what evidence will be sufficient, the Magistrate Judge's decision second-guesses their choice to rely on the SSA to make a credible determination of disability. If the Magistrate Judge's decision is adopted, a participant could absolve himself from satisfying the Trustees' generally applicable requirements, no matter how reasonable these requirements are, merely by alleging -- not proving -- that he cannot obtain a certain type of evidence.

The Magistrate Judge found that "the Plan give[s] the Trustees discretionary authority to determine eligibility for benefits and to construe the Plan." Decision at 4. He also found that Section 1.6 of the Plan defines "total disability" as a "physical or mental condition, for which medical evidence satisfactory to the Trustees has been furnished." Id. at 10. In accordance with their authority, the Trustees adopted a resolution indicating what medical evidence it deems sufficient to prove "total disability": medical evidence sufficient to prove disability is medical evidence deemed sufficient to support total disability by the Social Security Administration. The Magistrate Judge found that, "while an SSA determination of disability may constitute 'medical evidence' of total disability, an SSA determination based on insured status or some other

threshold non-medical eligibility criteria is not 'medical evidence.'" Id. at 11. Following this argument, the Magistrate Judge found that if Plaintiff applied for an SSA determination, he would be denied solely because of non-medical eligibility requirements.

The Magistrate Judge's opinion overlooks material evidence. Even if Plaintiff would be denied SSA benefits because of his alleged lack of credits, the Plan has submitted evidence that he would nonetheless be able to obtain a medical determination from the SSA. Donald Lavin, co-administrator of the Fund, provided an affidavit in which he attested that he had knowledge that the SSA has provided a medical determination and that at least one such case was similar to this one in that it involved an applicant who did not have sufficient work credits. The Magistrate Judge's recommendation circumvents this evidence by improperly requiring irrelevant information regarding "the underlying circumstances of that case." Decision at 8.

Moreover, even if the Plan had not submitted this evidence, the Magistrate Judge's opinion must be rejected because it was Plaintiff's burden to submit competent evidence or legal citations to support his claim that the SSA does not provide medical determinations without the satisfaction of other non-medical eligibility criteria. Plaintiff did not do so. Instead he relied upon the assertion of his attorney and a statement from Social Security dated April 15, 2002 which indicates that Plaintiff's "'record shows [he did] not have enough credits in the right time period' to qualify for *disability benefits*." Decision at 7. Plaintiff's attorney provided no legal authority to support his speculation and the SSA letter only states that the Plaintiff would not qualify for *benefits* – it says nothing about whether he could get a medical determination. Therefore, the Magistrate Judge failed to credit the Plan's evidence that the SSA provides medical determinations notwithstanding an applicant's failure to meet other non-medical

eligibility requirements *and* improperly shifted the burden of proving otherwise onto the defendant Plan.[2]

The Plaintiff failed to put forth any support for his claim that he could not get an SSA medical determination simply because he could foresee being ineligible to receive disability *benefits*. Conversely, the Plan submitted evidence that he could. The Plaintiff, however, made no attempt to get an SSA medical determination. Nevertheless, he seeks Plan benefits notwithstanding this failure. Plaintiff is not absolved from his duty to provide sufficient medical evidence merely because he did not attempt to obtain said medical evidence. Put another way, Plaintiff cannot fail to present medical evidence to the Plan and then contend that its denial of his application is arbitrary and capricious because it failed to consider medical evidence. If, for example, a plan requires an x-ray to prove the existence of a bone fracture, and a participant, for whatever reason, fails to provide the Plan with an x-ray, the Plan would be well within their rights to deny the participant's application. The participant could not simply contend that he did not think he could get an x-ray, and he should, therefore, be absolved of the requirement. This would be tantamount to permitting a participant to unilaterally overrule the Trustee's decision as to what medical evidence is sufficient to ensure a quality determination. Like the requirement of an x-ray, the Trustee's decision to require an SSA determination is designed to ensure a quality medical determination. This is neither arbitrary nor capricious.

**Conclusion**

Based on the foregoing, Defendant respectfully request that this Court deny Plaintiff's Motion for Summary Judgment.

---

[2] That the Magistrate Judge shifted the burden is apparent from his observation – albeit erroneous – that the Plan failed to provide legal authority or evidence to support the claim that the plaintiff could obtain an SSA determination even if he did not have sufficient work credits. See Decision at 8.

Respectfully submitted,
On behalf of the Defendant,
By its attorneys,

Marc B. Gursky, Esq. #2818
Elizabeth Wiens, Esq. #6827
GURSKY LAW ASSOCIATES
420 Scrabbletown Rd., Ste. C
North Kingstown, R.I. 02852
Tel. (401) 294-4700
Fax. (401) 294-4702

CERTIFICATION

I hereby certify that a true copy of the within document was sent by regular mail, postage prepaid, to Catherine A. Syner, VETTER & WHITE, 20 Washington Place, Providence, RI 02903 on this 27 day of July, 2006.